UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Rick S.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

23-CV-0606-LJV
DECISION & ORDER

---

On June 27, 2023, the plaintiff, Rick S. ("Rick"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On October 21, 2023, Rick moved for judgment on the pleadings, Docket Item 6; on November 9, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on November 26, 2023, Rick replied, Docket Item 8.

For the reasons that follow, this Court grants Rick's motion in part and denies the Commissioner's cross-motion.[3]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Rick applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a).

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. THE ALJ'S DECISION

On February 28, 2023, the ALJ found that Rick had not been under a disability since filing his application for SSI on November 14, 2017.  See Docket Item 3 at 476. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  See id.

At step one, the ALJ found that Rick had engaged in substantial gainful activity from October 2021 through June 2022 but that "there has been a continuous 12-month period[] during which [Rick] did not engage in substantial gainful activity." *Id.* at 478.  At step two, the ALJ found that Rick suffered from several severe, medically determinable impairments: "post-traumatic stress disorder (PTSD), mood disorder, obesity, asthma, and anxiety disorder." *Id.*

At step three, the ALJ found that Rick's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 478-79.  More specifically, the ALJ found that Rick's physical impairments did not meet or medically equal listing 3.03 (asthma). *Id.* at 478.  Likewise, the ALJ found that Rick's mental impairments did not meet or medically equal listing 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor-related disorders)*. Id.* at 479.  In assessing Rick's mental impairments, the ALJ found that Rick was: (1) not impaired in understanding,

3

remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting or managing oneself. *Id.*

The ALJ then found that Rick had the residual functional capacity ("RFC")[4] to "perform work a full range of work at all exertional levels" except that:

> [Rick] can never work in humidity and wetness, dust, odors, fumes, pulmonary irritants, and in extreme heat or extreme cold. He is able to perform simple, routine, and repetitive tasks and make simple, work-related decision[s]. [Rick] is able to interact with supervisors, coworkers, and the public occasionally, and tolerate few changes in a routine work setting, defined as occasional changes to the worksite and routine.

*Id.* at 480.

At step four, the ALJ found that Rick had no past relevant work. *Id.* at 483. But given Rick's age, education, and RFC, the ALJ found at step five that Rick could perform substantial gainful activity as a marker, assembler of small products, or hand packer. *Id.* at 484; *see Dictionary of Occupational Titles* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 706.684-022, 1991 WL 679050 (Jan. 1, 2016); *id.* at 920.587-018, 1991 WL 687916 (Jan. 1, 2016). The ALJ therefore found that Rick had not been under a disability or entitled to SSI since his application was filed on November 14, 2017. *See* Docket Item 3 at 485.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

4

## II. ALLEGATIONS

Rick argues that the ALJ erred in finding the opinion of Licensed Master Social Worker Korie Leitten partially persuasive without explaining why the RFC did not incorporate Leitten's finding that Rick was seriously limited in maintaining attention for two hours at a time. Docket Item 6-1 at 12. Along the same lines, Rick argues that the ALJ erred in equating Leitten's findings that he was "seriously limited" with "moderate limitations." *Id.* at 11-12. This Court agrees with Rick.

## III. ANALYSIS

On September 20, 2022, Leitten completed an RFC questionnaire addressing Rick's mental abilities and aptitude. See Docket Item 3 at 723-27. Leitten noted that Rick "may be impacted by his trauma for his lifetime" but that "with continued treatment, [his] symptoms may improve within 6-12 months." *Id.* She opined that Rick's ability to maintain attention for two-hour segments, work in coordination with or proximity to others without being unduly distracted, complete a normal workday or workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, deal with normal work stress, and carry out detailed instructions was "seriously limited." *Id.* at 725-26.[5] In explaining those findings, Leitten noted that Rick's symptoms interrupted his daily activities, he had difficulty maintaining attention for more than thirty minutes, he was easily distracted and talkative, he had a history of responding to criticism physically, and he struggled to manage his personal life stressors and work stress. *Id.* at 725. Leitten also found that

---

[5] "Seriously limited" means that the claimant's "ability to function in this area . . . would frequently be less than satisfactory in any work setting." *Id.* at 725.

5

Rick was "unable to meet the competitive standards" in traveling to unfamiliar places. *Id.* at 726. And she concluded that Rick's impairments would cause him to be absent from work about three days each month. *Id.* at 727.

Under the new regulations, therapists and social workers without clinical designation are not considered medical sources because they are not "licensed . . . healthcare worker[s]." *See* 20 C.F.R. § 416.902(i), (j). Rather, they are considered nonmedical sources whose opinions are not subject to the same consideration as those of medical sources. *See id.* § 416.920c(d) (providing that an ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) in this section"); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 92 Fed. Reg. at 5850 (noting that "nonmedical sources" include "counselors[,] . . . social workers, and public and private social welfare personnel.").

Nevertheless, "[a]n ALJ is not free to disregard a medical opinion solely on the basis that the opinion is from a nonmedical source." *Allen v. Comm'r of Soc. Sec.,* 351 F. Supp. 3d 327, 336 (W.D.N.Y. 2018) (internal citations omitted). In fact, the regulations provide that "[b]ecause symptoms . . . are subjective and difficult to quantify, any symptom-related functional limitations and restrictions[] that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account." 20 C.F.R. § 416.929(c)(3); *see also id.* § 416.929(a) (providing that the ALJ "will consider . . . any description [the claimant's] nonmedical sources may provide about how [the claimant's] symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to

6

work."). What is more, while "[i]t is within the province of the ALJ to resolve conflicts in the medical evidence," ALJ's must "explain[] how the evidence conflicts and how they resolve the conflict." *Lianna M.D. v. Kijakazi,* 2021 WL 4150102, at *7 (N.D.N.Y. Sep. 13, 2021) (citing *Gough v. Saul,* 799 F. App'x 12 (2d Cir. 2020).

In formulating Rick's mental RFC, the ALJ found Leitten's opinion "partially persuasive," Docket Item 3 at 483, discounting some parts and crediting others. For example, the ALJ noted that "the record does not contain any subjective findings" supporting Leitten's opinion that Rick was unable to meet the competitive standards in traveling to unfamiliar places. *Id.* Likewise, he found that Leitten's opinion that Rick would be absent from work about three days per month was not supported by any objective findings in the record and that Rick's current work history undermined such a limitation. *Id.* On the other hand, the ALJ found Leitten's opinions about "serious" impairments to be "generally consistent with the psychiatric record as well as [Rick's] testimony documenting [his] issues with dealing with others, including his mother as well as issues [with] concentration," and he equated those opinions with "moderate limitations." *Id.* (citing *id.* at 754-840)*.*

As an initial matter, equating serious impairments with "moderate" limitations was error. "Moderate" means not serious or work preclusive—that is, that a claimant's functioning is "fair." *See* 20 C.F.R. Pt 404, Subpt P, App'x 1, 12.00(F)(2). In contrast, Leitten's findings—that Rick's symptoms interrupted his daily activities, that he had difficulty maintaining attention for more than thirty minutes, that he responded to criticism physically, etc.—are more consistent with "marked limitations," meaning that "an individual's ability to function independently, appropriately, effectively, and on a

7

sustained basis is seriously limited." *Id.* Indeed, by using the word "seriously" in connection with a marked limitation, *see id.*, the regulations suggest exactly that.

What is more, the ALJ never explained why the RFC did not incorporate Leitten's determination that Rick was seriously limited in maintaining attention for two two-hour segments, despite finding that portion of Leitten's findings to be "generally consistent with the psychiatric record" and with Rick's testimony. Docket Item 3 at 483. Although the ALJ was not required to accept or reject Leitten's entire opinion, *see Younes v. Colvin,* 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015), "when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions," *Dotson v. Berryhill,* 2018 WL 3064195, at *3 (W.D.N.Y. Jun. 21, 2018). Under the circumstances here, therefore, the ALJ was required to explain why the RFC did not incorporate Leitten's opinion that Rick was seriously limited in maintaining attention for two hours at a time. *See Marita K. v. Comm'r of Soc. Sec.,* 2023 WL 5368494, at *4 (W.D.N.Y. Aug. 22, 2023) ("[E]ven if the ALJ was entitled to reject portions of Dr. Dave and OTR Gula's opinions, without sufficient explanation, such rejection is an error in and of itself that warrants remand.") (citing *Renee M.B. v. Comm'r of Soc. Sec.,* 2021 WL 716704, at *7 (W.D.N.Y. Feb. 24, 2021) ("Even if ALJ Smith was entitled to [reject portions of opinion evidence], her failure to explain her reasoning was legal error.").

For both of those reasons, the ALJ's analysis of Leitten's opinion was flawed. *See Cynthia A. v. Comm'r of Soc. Sec.,* 2023 WL 6229600, at *4 (W.D.N.Y. Sep. 26, 2023) ("Here, the ALJ found the opinions of LMSW's Diaz and Campbell at least partially persuasive and included in his RFC determination some of the limitations to which they opined, but he did not include in the RFC determination any limitation related

8

to work schedule or job attendance, nor did he offer any explanation for not including such limitations.  This was error."); *Marita K.,* 2023 WL 5368494, at *4 (remanding where the ALJ found opinions persuasive "yet failed to include critical limitations from those opinions in the RFC or explain their absence"); *John F. v. Comm'r of Soc. Sec.,* 2021 WL 3851988, at *5 (W.D.N.Y. Aug. 27, 2021) (remanding where the ALJ found opinion "somewhat persuasive and somewhat consistent with the medical evidence" but included only some of the limitations in that opinion); *Renee M.B.,* 2021 WL 716704, at *7 (remanding where the ALJ "appeared to incorporate some . . . limitations and their severity, but not others . . . with no explanation" because "her failure to explain her reasoning was a legal error"); *Dotson v. Berryhill,* 2018 WL 3064195, at *3 (W.D.N.Y. Jun. 21, 2018) (remanding where ALJ accepted a portion of a medical source statement but ignored specific limitations).

And the ALJ's error might indeed have made a difference in his conclusion here. The Social Security Administration considers the ability to "maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)" part of  "[u]nderstanding, carrying out, and remembering simple instructions"; that, in turn, is part of the "[m]ental [a]bilities [n]eeded [f]or [a]ny [j]ob."  Social Security Program Operations Manual System (POMS) DI 25020.010(b)(2)(a).  Moreover, the ability to "maintain attention for extended periods of 2-hour segments (concentration is not critical)" is considered by the Social Security Administration to be one of the "[m]ental [a]bilities [c]ritical [f]or [p]erforming [u]nskilled [w]ork."  *Id.* 25020.010(B)(3)(d).  So the ALJ's failure to address Leitten's specific finding

9

that Rick had difficulty maintaining attention for more than thirty minutes, Docket Item 3 at 725, or to incorporate that limitation into the RFC, is particularly troublesome.[6]

In an effort to suggest otherwise, the Commissioner argues that the RFC is consistent with and supported by other opinions in the record—in particular, the opinions of Christine Ransom, Ph.D., and M. Juriga, Ph.D.  Docket Item 7-1 at 12-15. But that misses the point.  The ALJ's error was not rejecting Leitten's opinion and crediting others; rather, it was apparently accepting her opinion but not incorporating its limitations in the RFC or explaining why that was unnecessary.

And, in fact, the ALJ did not credit Dr. Ransom's opinion to reject Leitten's.  On the contrary, the ALJ found Dr. Ransom's opinion unpersuasive.  *Id.* at 483.  And while the ALJ found Dr. Juriga's opinion partially persuasive, he did so "only to the extent it was consistent with the" RFC, which is little more than a circular conclusion.  *Chelsea A. v. Kijakazi,* 2023 WL 3751949, at *3 (W.D.N.Y. Jun. 3, 2023) (citing *Potts v. Comm'r of Soc. Sec.,* 2018 WL 5886909, at *4 (W.D.N.Y. Nov. 9, 2018) ("Simply put, an 'ALJ cannot credit a medical opinion to the extent it is consistent with h[is] already determined RFC.'")).

In sum, although the ALJ was not required to accept everything about which Leitten opined, *see Younes,* 2015 WL 1524417, he was required to support his

---

[6] In fact, the vocational expert testified that if Rick required a 20% off-task limitation and was absent two or more days each month, there would be no work available for him.  Docket Item 3 at 515-16.  So "[a]t best, . . . the ALJ's conclusion c[ame] from whole cloth" and "[a]t worst, [it] responds to the vocational expert's testimony" that incorporating Leitten's finding would mean that Rick could not perform the work that the RFC found he could.  *See Elder v. Comm'r of Soc. Sec.,* 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019); *Annis v. Comm'r of Soc. Sec.,* 2019 WL 5875231, at *11 (W.D.N.Y. Dec. 17, 2019).

10

assessment of the opinion with record evidence and to explain his reasoning in discrediting the portions favorable to Rick.  Because the ALJ did not explain why he omitted a portion of Leitten's opinion that he purported to find persuasive, remand is required.  *Rivera v. Comm'r of Soc. Sec.,* 2022 WL 4482374, at *3 (S.D.N.Y. Sep. 27, 2022) (declining to adopt report and recommendation where ALJ excluded any off task/absence limitation but found multiple medical opinions persuasive that found the claimant had limitations in maintaining regular attendance and staying on-task); *Landers v. Colvin,* 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("[A]n ALJ need not call out every moderate limitation by name, provided that the RFC appropriately reflects such limitations.").

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 7, is DENIED, and Rick's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:	September 16, 2025
	Buffalo, New York

									*Lawrence J. Vilardo*
									LAWRENCE J. VILARDO
									UNITED STATES DISTRICT JUDGE

11